**Dwyer & Collora, LLP**

600 Atlantic Avenue
Boston, Massachusetts 02210-2211
Telephone (617) 371-1000
Fax (617) 371-1037
www.dwyercollora.com

**William H. Kettlewell**
(617) 371-1005
wkettlewell@dwyercollora.com

November 5, 2004

**VIA FACSIMILE & FIRST CLASS MAIL**
William M. Welch, II
Assistant U.S. Attorney
U.S. Attorney's Office
Federal Building & Courthouse
1550 Main St., Room 310
Springfield, MA 01103

    Re:    United States v. Albert Innarelli, et al.
             Crim. No. 04-30046-MAP

Dear Mr. Welch:

    Pursuant to Local Rule of Criminal Procedure 116.3, please accept this letter as our formal request for discovery on behalf of our client, Theodore Jarrett ("Jarrett"), a defendant in the above-referenced matter.

    A.    Fed. R. Crim. P. 16

    Notwithstanding your automatic discovery letter dated October 14, 2004, pursuant to Fed. R. Crim. P. 16, we respectfully request the following information that was either not provided with your discovery letter or provided without sufficient specificity to allow Mr. Jarrett adequately to prepare for trial.

             1.    Statements of the Defendant

    To the extent the government is in possession of any statements of Mr. Jarrett within the meaning of Rule 16(a)(1)(A) other than those described in your October 14, 2004 automatic discovery letter, we request them.

William M. Welch, II
November 5, 2004
Page 2

In addition, we request production of any statements of the identified co-conspirators, including but not limited to, Elliott Beals and George Petropolous, made during the course of and in furtherance of the alleged conspiracy, whether or not the government presently intends to call the co-conspirators as witnesses at trial. See United States v. Murgas, 967 F. Supp. 695, 713-16 (N.D.N.Y. 1997) (ordering the government to produce such discovery under Fed. R. Crim. P. 16(a)(1)(A)); United States v. Madeoy, 652 F. Supp. 371, 375 (D.D.C. 1987) (statements of coconspirators whom government does not intend to call as witnesses at trial are discoverable in advance of trial); United States v. Williams, 113 F.R.D. 177, 180-81 (D. Fla. 1986) (interpreting statements under Fed. R. Crim. P. 16(a)(1)(A) to include statements made by coconspirators that may be imputed to the defendant if government does not intend to offer coconspirator as a witness at trial).

2. Documents and Tangible Objects Under Rule 16(a)(1)(C)

You have permitted us to inspect documents in the government's possession, custody or control. We have made a preliminary inspection of these materials. We reserve our right to request further information based upon our initial review. We request that you continue to make the documents available for our inspection and review at mutually convenient times so that we will continue to have access to these documents in the future. Let us know if this is something on which we can agree.

3. Reports of Examinations and Tests

You have not stated in your automatic discovery letter whether the government has reports of physical or mental examinations or scientific tests or experiments made in connection with this case. To the extent any reports of any such examinations, tests or experiments were made or became available subsequent to your letter, pursuant to Rule 16(a)(1)(D), we request the results thereof.

4. Search Materials under Local Rule 116.1(c)(1)(b)

You have identified several searches conducted pursuant to search warrants and have enclosed affidavits relating to the application for such search warrants. Pursuant to Rule 12(d), please state your intentions with respect to use of any of the seized materials as evidence against Mr. Jarrett at the trial of his case.

5. Consensual Interceptions Under Local Rule 116.1(c)(1)(d)

You have previously played what purported to be a consensual audio tape recording containing statements of Mr. Jarrett and a co-conspirator or cooperating individual. We request a copy of the tape as well as any other consensual interceptions. In connection with your production of the above-referenced audio tape, please provide:

William M. Welch, II
November 5, 2004
Page 3

        a.      Any and all documents relating to any requests for authorization of consensual monitoring of conversations in the course of the investigation resulting in the above-referenced indictment (hereinafter "the Investigation").

        b.      Any reports reflecting statements by all informants used in this Investigation, including but not limited to Mr. Beals or Mr. Petropolous, or by any undercover agent in connection with or in preparation for the tape recording requested by Mr. Jarrett.

        c.      Preliminary transcripts of any of the consensual recordings that the government has or intends to offer against Mr. Jarrett as evidence or an aid to the jury at trial.

        d.      Any surveillance logs documenting surveillance of Mr. Jarrett and/or other members of the alleged conspiracy.

        e.      Any pen register results from any pen register conducted during this Investigation.

B. <u>Exculpatory Information Pursuant to Local Rule 116.2(b)(1)</u>

   1.    <u>Promises, Rewards, Inducements</u>

      Please provide the following:

        a.      You have provided copies of plea agreements with the U.S. Attorney's office, executed by Messrs. Beals and Petropolous. Please provide documents reflecting any promises, rewards or inducements made to Mr. Beals and/or Mr. Petropolous in relation to the signing of such an agreement. Additionally, please provide the following: (i) a copy of any report(s) containing any proffers made by Beals or Petropolous; and (ii) all documents relating to any promises, rewards or inducements made to Beals or Petropolous by any representative or agent of the government as a result of any proffer made. In addition, please state any oral promises, rewards or inducements offered to Beals or Petropolous in connection with this Investigation.

        b.      Please state whether Messrs. Beals, Petropolous or any other witnesses have received any money, any financial instrument (including but not limited to the use of a credit card) or goods from the government or from any government agent, whether or not acting with government approval, in any way relating to the witnesses participation in this Investigation.

William M. Welch, II
November 5, 2004
Page 4

      c.     All promises of leniency or declinations of prosecution for individuals related to the Investigation of this case, or to persons related by blood or marriage to such individuals.

      d.     Evidence of threats against any witnesses or persons related by blood or marriage to any witnesses.

    C.     Exculpatory Information Pursuant to Local Rule 116.2(A)(2)

While we understand that Local Rule 116.2(A)(2) provides for the production of certain categories of exculpatory information not later than twenty-one (21) days before the trial date established by the judge who will preside, under the principles articulated in United States v. Snell, 899 F. Supp. 17 (D. Mass. 1995), we nonetheless specifically request disclosure of the following categories of exculpatory information at the government's earliest possible convenience.

      1.     Information Concerning Veracity, Credibility and Motivation of Anticipated Government Witnesses: Please provide a full and complete statement of any information tending to cast doubt on any potential government witness' veracity or credibility, including any motivation to lie, provide incomplete or inaccurate information, or shade the truth, or any bias, prejudice, grudge or animus against either the defendants. This request includes a complete statement of any information and related documentation about examinations, including polygraphs, that concluded, in whole or in part, that any potential government witness or informant was not telling the truth as to any answer, that the witness appeared not to be telling the truth as to any answer, or that the examination could not reveal whether or not the witness was telling the truth.

      2.     Information Concerning Poor Memory of Government Witnesses: Please provide a full and complete statement of any information and related documentation tending to show the poor, incomplete, enhanced, or inaccurate memory of any potential government witness, including all statements by the witness or any other person regarding the quality of the witness' memory in general and with respect to the events at issue in the indictment.

      3.     Prior or Subsequent Inconsistent Statements of Government Witnesses: Please provide a full and complete statement and related documentation of any statement, made orally or in writing, of any potential government witness, which is inconsistent with any other statement of that witness, whether or not made to a government agent, which is in the government's custody or control or can be obtained through reasonable diligence.

      4.     Prior or Subsequent Inconsistent Statements of Any Person: Please provide a full and complete statement and related documentation of any statement,

made orally or in writing, by any person that is inconsistent with any statement made orally or in writing by any potential government witness, whether or not made to a government agent, which is in the government's custody or control or can be obtained through reasonable diligence.

       5.      <u>Treatment Information Affecting Credibility or Accuracy of Government Witnesses:</u> Please provide a full and complete statement of any treatment of any anticipated government witness for drug abuse, alcoholism, or physical, mental, visual or psychiatric disease, defect, disorder, condition, limitation or impairment, including the identity of the treating physician and treatment facility, the dates of such treatment and all records relating to such treatment, which are in the government's custody, possession or control or can be obtained through reasonable diligence. In addition, please provide a full and complete statement and related documentation, if any, indicating whether any potential government witness suffered from alcohol or drug abuse which may have affected the witness' judgment, perception or memory.

       6.      <u>Fed. R. Evid. 608(b) Evidence</u>: Please provide a full and complete statement of any conduct that may be admissible under Fed. R. Evid. 608(b), known to the government or discoverable through reasonable diligence, to have been committed by any anticipated government witness.

       7.      <u>Prosecutable Federal Offenses Committed by Government Witnesses:</u> Please provide a full and complete statement of any prosecutable federal offenses known by the government or discoverable through reasonable diligence, to have been committed by any anticipated government witness, including any potential crimes in addition to those set forth in the plea agreements allegedly committed by Elliott Beals, George Petropolous or any other named co-conspirator.

       8.      Please provide copies of all documents contained in any investigation file of any Government witnesses, including any such files maintained by the Federal Bureau of Investigation and/or the Massachusetts Attorney General's office.

    D.    <u>Specific Requests for Evidence Casting Doubt on Defendant's Guilt:</u>

As to the specific allegations contained in the indictment returned against the defendants, we request the following information which is exculpatory under the principles articulated in <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963), <u>United States v. Agurs</u>, 427 U.S. 97, 106 (1976) and progeny. We request that you review all witness statements and grand jury testimony, among other evidence, for purposes of determining whether there exists any evidence satisfying the following specific requests:

William M. Welch, II
November 5, 2004
Page 6

    1. Any evidence tending to show that Mr. Jarrett has no knowledge that Mr. Bergdoll, Mr. Petropoulos and/or other co-conspirator purchased distressed properties located within low-income neighborhoods and engaged in a practice known as "land flipping."

    2. Any evidence tending to show that Mr. Jarrett had no knowledge of the activities of individuals described in the indictment as "runners" to recruit prospective buyers and to pay finders fees averaging approximately $2,000.00/buyer.

    3. Any evidence tending to show that Mr. Jarrett did not represent to prospective buyers that they would not have to make down payments to purchase property.

    4. Any evidence tending to show that Mr. Jarrett or any of the other co-conspirators did not promise or pay prospective buyers money back at real estate closings for the flipped properties.

    5. Any evidence tending to show that Mr. Jarrett or other co-conspirators did not generate or process fraudulent loan applications or otherwise falsify documentation in order to obtain loans from Equicredit.

    6. Any evidence tending to show that Mr. Jarrett or the other co-conspirators did not generate false and fraudulent documentation that prospective buyers had made down payments that were never really made.

    7. Any evidence tending to show that Mr. Jarrett or the other co-conspirators did not generate false and fraudulent income information that artificially inflated the true income of prospective buyers.

    8. Any evidence tending to show that Mr. Jarrett or the other co-conspirators did not generate false and fraudulent documentation to show improvements to properties that were never made.

    9. Any evidence tending to show that Mr. Jarrett or the other co-conspirators did not generate "bogus second mortgages," as described in the indictment to assist in securing loans from Equicredit or other lending institutions.

    11. Any evidence tending to show that Mr. Jarrett or the other co-conspirators did not create false and fraudulent appraisals and use those appraisals to support the loan amounts for artificially inflated properties.

    12. Any evidence tending to show that Mr. Jarrett or the other co-conspirators did not receive "incentive payments" such as cash or hidden interest, in real estate deals.

William M. Welch, II
November 5, 2004
Page 7

      13.     Any evidence tending to show that Mr. Jarrett had no knowledge that Attorney Innarelli was generating false and fraudulent real estate closing documentation to facilitate and conceal the fraud.

      14.     Any evidence tending to show that Mr. Jarrett did not know that Attorney Innarelli received incentive payments such as cash or hidden interest, in real estate.

      E.     Fed. R. Evid. 404(b) Evidence

To the extent you intend to introduce any evidence of prior or subsequent "bad acts" of Mr. Jarrett or any indicted or unindicted co-conspirator pursuant to Rule 404(b) of the Federal Rules of Evidence, please provide a description of the conduct or incident which gives rise to each such "bad act", the names, addresses and dates of birth of witnesses to such "bad acts", the substance of their expected testimony, related documents and a designation of the theory of admissibility.

While we recognize that Rule 404(b) evidence will generally be ordered by the court to be provided no later than 21 days before trial, the circumstances of this case compel early production of such material. Consequently, we request that the government identify well before the twenty-first day prior to trial any Rule 404(b) evidence which it may seek to offer into evidence at trial in this matter.

      F.     Expert Witness Information

Pursuant to Local Rule 116.5(A)(2), the defendant seeks discovery concerning expert witnesses under Fed. R. Crim. P. 16(a)(1)(E). To the extent you intend to introduce expert testimony in this case pursuant to Rules 702, 703 or 705 of the Federal Rules of Evidence, the defendants request the identity of the expert(s) and a summary for each, describing the witness' qualifications, opinion(s) and the bases and reasons therefore.

      G.     Particulars of Allegations

Pursuant to Local Rule 116.3(E), please provide the following particulars related to allegations in the Indictment returned against each defendant:

      1.     Identify the date, time and place at which Mr. Jarrett became a member of the alleged conspiracy and the specific time period he remained a part of such alleged conspiracy.

      2.     Identify the scope of the agreement allegedly entered into by Mr. Jarrett and each alleged conspirator.

William M. Welch, II
November 5, 2004
Page 8

    3.    With respect to paragraph 6 of the indictment, please identify: the precise manner and means through which Jarrett assisted Bergdoll, Romeo, Matos and other co-conspirators in obtaining loans for prospective buyers through Equicredit Corporation.

    4.    With respect to paragraph 14 of the indictment, please identify the so-called runners referred to in this paragraph.

    5.    With respect to paragraph 14 of the indictment, please specify whether Mr. Jarrett used a runner to recruit prospective buyers and pay finder's fees to such individuals for the successful sale of property.

    6.    With respect to paragraph 15 of the indictment, please identify which defendant or other co-conspirator represented to prospective buyers they would not have to make any down payment toward the purchase of real property.

    7.    With respect to paragraph 15 of the indictment, please identify which defendant or other co-conspirator promised prospective buyers money back at the real estate closing for the sale of the property.

    8.    With respect to paragraph 15 of the indictment, please identify which defendant or other co-conspirator represented that they would make repairs to a property prior to a closing.

    9.    With respect to paragraph 16 of the indictment, please identify which defendant or other co-conspirator generated and then processed false and fraudulent loan applications.

    10.    With respect to paragraph 16 of the indictment, please describe the manner and means by which the loan applications submitted to Equicredit Corporation were false and/or fraudulent.

William M. Welch, II
November 5, 2004
Page 9

    H.    <u>Reciprocal Discovery</u>

We are not at this time in the possession, custody or control of any information that Fed. R. Crim. P. 16(b)(1)(A) or (B) requires to be disclosed. However, we recognize our continuing duty to provide such information and assure you that we will forward such responsive information if and when we discover it.

                                      Very truly yours,

                                      William H. Kettlewell

                                      Maria R. Durant

WHK:MRD/mjc