UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | CRIMINAL NO. 04-30046-MAP |
| THEODORE JARRETT, *et al.* | ) ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT JARRETT'S MOTION FOR SEVERANCE**

Defendant Theodore Jarrett ("Mr. Jarrett") submits this memorandum of law in support of his motion, pursuant to Federal Rule of Criminal Procedure 14 ("Rule 14") and the Court's inherent case management authority, to sever his trial from the trial of the remaining defendants charged in the sixty-nine-count Superseding Indictment. The scope and complexity of the wide-ranging scheme alleged in the Superseding Indictment, and the confusion that would result from a single trial of all defendants regarding their respective participation in various parts of that scheme, would preclude the jury in a joint trial from making a reliable judgment as to Mr. Jarrett. Furthermore, certain evidence that would be admissible against other defendants as set forth below would be inadmissible against Mr. Jarrett in a joint trial. Therefore, Mr. Jarrett respectfully requests this Court to utilize its considerable discretion and grant his motion for severance.

**STANDARD OF REVIEW**

Pursuant to Rule 14, the Court may grant a severance of defendants joined for trial if it appears that a defendant is prejudiced by such joinder for trial together. Fed. R.

Crim. P. 14. Severance is appropriate if "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." United States v. Sotomayor-Vazquez, 249 F.3d 1, 16-17 (1st Cir. 2001) (citation omitted). "Prejudice from joinder can come in various forms, including jury confusion, the impact of evidence that is admissible against only some defendants, and 'spillover' effects where the crimes of some defendants are … better documented than the crimes of others." United States v. Rodriguez-Marrero, 390 F.3d 1, 26 (1st Cir. 2004) (quoting United States v. Innamorati, 996 F.2d 456, 469 (1st Cir. 1993)).

"Rule 14 gives the district judge wide authority to sever defendants" joined for trial together. United States v. DeCologero, 364 F.3d 12, 25 (1st Cir. 2004); see also Sotomayor-Vazquez, 249 F.3d at 17 (quoting United States v. Pierro, 32 F.3d 611, 616 (1st Cir. 1994)) (trial court "afforded 'considerable leeway' in determining whether severance is appropriate"). "[T]he prime factor that a court must consider in evaluating a severance motion 'is whether the court may reasonably expect the jury to collate and appraise the independent evidence against each defendant.'" Rodriguez-Marrero, 390 F.3d at 27 (quoting United States v. Perkins, 926 F.2d 1271, 1281 (1st Cir. 1991)).

In addition to its authority under Rule 14, the Court may sever defendants joined for trial together under its inherent authority to manage its own cases. See United States v. Leichter, 160 F.3d 33, 35-36 (1st Cir. 1998). "The power to order separate trials 'rests within the broad discretion of the District Court as an aspect of its inherent right and duty to manage its own calendar.'" Id. at 35 (quoting United States v. Gay, 567 F.2d 916, 919 (9th Cir. 1978)). Therefore, the Court may "tailor the size of a case and length of a trial

by limiting … the number of defendants" to "protect the interests of the parties and the public in just determination of a criminal proceeding with 'simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay.'" United States v. Shea, 750 F.Supp. 46, 49 (D. Mass. 1990) (quoting Fed. R. Crim. P. 2); see also id. at 50 (noting authority to sever independent of that under Rule 14).

## ARGUMENT

A.  **The Court Should Sever Mr. Jarrett from Trial of the Other Defendants Because the Undue Complexity and Confusion of a Joint Trial Would Preclude a Reliable Judgment as to Mr. Jarrett.**

Severance of Mr. Jarrett's trial is appropriate because a single trial with the remaining defendants for the complicated fraud scheme alleged in the Superseding Indictment would prevent the jury from making a reliable judgment as to Mr. Jarrett. See Rodriguez-Marrero, 390 F.3d at 27. The complexity of the allegations in the Superseding Indictment, including the number of defendants and their various roles in the alleged real estate scheme, as well as the number of transactions that comprise that scheme and the involvement of different defendants in each of those transactions, would so confuse a jury as to prejudice their factfinding regarding Mr. Jarrett. See DeCologero, 364 F.3d at 25 (severance of defendants an appropriate means to manage trial of complicated indictment). Moreover, the Superseding Indictment's suggestion that Mr. Jarrett participated with the other defendants in a single unified scheme when the charges actually allege *a series of distinct* transactions will unduly prejudice the jury in a joint trial as to Mr. Jarrett's involvement in the specific transactions with which he is charged. See Kotteakos v. United States, 328 U.S. 750, 772-75 (1946); United States v. Pappathanasi, 383 F.Supp.2d 289, 296-97 (D. Mass. 2005) (Wolf, J.). Under both Rule

14 and the Court's inherent case management authority, severance is the appropriate means to prevent such undue prejudice and complexity.

The sixty-nine-count Superseding Indictment charges Mr. Jarrett and twelve other defendants in a complicated and wide-ranging real estate fraud scheme. The government alleges that Albert Innarelli ("Mr. Innarelli"), a real estate closings attorney, joined in different combinations at different times with the other defendants, including Mr. Jarrett as well as real estate sellers, real estate appraisers, mortgage brokers, and others, over the course of nearly three years, to defraud fifteen different lending institutions regarding a total of sixty-eight different real estate transactions. The sixty-eight real estate transactions, on which the sixty-eight wire fraud counts in the Superseding Indictment are based, each allegedly involved various combinations of anywhere from two to six of the defendants. However, no defendant other than Mr. Innarelli is charged in connection with all, or even nearly all, of the transactions. In particular, Mr. Jarrett's alleged participation is limited to fewer than half of the transactions at issue. At the same time, the Superseding Indictment lumps together groups of defendants without regard to any specifically alleged connections among or between them, or to the extent of each defendant's alleged involvement in the various transactions. See, e.g., Superseding Indictment at 6-7, ¶ 19 ("Bergdoll, Romeo, Matos and other co-conspirators, who had established business relationships with Jarrett, Smith, McCarthy, Lynch, Zepka and other mortgage brokers, referred many of these prospective buyers to them for loans.").

A single trial of Mr. Jarrett with the other defendants for each of their roles in the sixty-eight different transactions alleged in the Superseding Indictment would substantially and prejudicially confuse the jury as to Mr. Jarrett's involvement in those

4

transactions. "When many defendants are tried together in a complex case and they have markedly different degrees of culpability, the risk of prejudice is heightened." Zafiro v. United States, 506 U.S. 534, 539 (1993). Given the number of defendants in this case and the different roles that each of those defendants allegedly played (seller, appraiser, broker) at various times in different transactions, as well as the alleged participation of each defendant in any number of the transactions at issue (from as few as one or two to as many as all sixty-eight), there is a serious potential for confusion as to Mr. Jarrett's role in certain of the sixty-eight transactions and, indeed, as to his lack of any alleged connection to over half of those transactions. As a result, Mr. Jarrett faces substantial prejudice in a joint trial of all of the defendants for the complicated scheme that would preclude the jury from making a reliable judgment regarding his alleged involvement in that scheme. Cf. Shea, 750 F.Supp. at 50 (severing drug trafficking case involving twenty-three defendants and fifty-seven counts because single trial would be "overly complex and lengthy").

The prejudice to Mr. Jarrett in a joint trial in this case would be similar to the prejudice to two of the nine defendants tried together in United States v. Winter, 663 F.2d 1120 (1st Cir. 1981), abrogated in part by Salinas v. United States, 522 U.S. 52 (1997). Like the remaining defendants in this case who allegedly joined in a single real estate fraud scheme, nine defendants in Winter had been tried together "as part of a massive [horse] race fixing conspiracy" in which twenty different races had been fixed. Id. at 1139. Two of the defendants, however, had no alleged connection to nineteen of those races. The First Circuit explained that "the number of substantive counts and proof of fixed races in which [the two defendants] were not implicated could only have

5

overwhelmed the judgment of the jury." Id. The First Circuit concluded that the resulting prejudice to the two defendants was not "within tolerable limits" and reversed their convictions. Id.

This case involves over three times as many distinct real estate transactions as the total number of races at issue in Winter. Although Mr. Jarrett was allegedly involved in relatively more transactions than the two defendants in Winter, he still faces joint trial for a fraud scheme that allegedly involved sixty-eight different transactions and twelve other defendants, where he has no charged connection to over half of the transactions that allegedly comprise that scheme. Consequently, the risk of prejudice to Mr. Jarrett based on a confused and "overwhelmed" jury is the same as that in Winter.

A single trial with the remaining defendants would also preclude a reliable judgment as to Mr. Jarrett because the Superseding Indictment suggests that the sixty-eight real estate transactions at issue constituted a single fraudulent scheme. The Superseding Indictment specifically states that all of the defendants "devised *a scheme* and artifice to defraud … various lending institutions." See Superseding Indictment at 4-5, ¶ 14 (emphasis added). Moreover, Count Sixty-Nine charges all of the defendants with joining a single conspiracy to launder money in connection with that scheme.

However, as Counts One through Sixty-Eight make clear, the Superseding Indictment is actually directed towards a complex series of distinct alleged schemes that involved different people in different roles at different times. As noted above, each count corresponds to a different real estate transaction, and each transaction allegedly involved, at most, six of the defendants. Moreover, each transaction allegedly involved different defendants, different sellers, different mortgage brokers, different appraisers, and

different lending institutions, in different combinations.  Again, the only common thread in each of the sixty-eight transactions is Mr. Innarelli.  The Superseding Indictment alleges no connection between certain defendants in any of the sixty-eight alleged transactions: specifically, Mr. Jarrett is not charged in connection with any of the seventeen transactions in which defendant Kathryn Zepka was allegedly involved.

Essentially, the real estate fraud scheme alleged in the Superseding Indictment is akin to "a classic 'hub-and-spoke' conspiracy."  See United States v. Chandler, 388 F.3d 796, 807 (11th Cir. 2004) (citing Kotteakos, 328 U.S. at 755); see also United States v. Dworken, 855 F.2d 12, 24 (1st Cir. 1988); Pappathanasi, 383 F.Supp.2d at 296-97.  As the Eleventh Circuit has recently explained:

> In such a conspiracy, the core conspirators are the hub and each group of co-conspirators form a spoke leading out from the center in different directions.  The core conspirators move from spoke to spoke, directing the functions of the conspiracy.

Chandler, 388 F.3d at 807 (citing Kotteakos, 328 U.S. at 755).  In such a situation, "there is not a single conspiracy, but rather as many conspiracies as there are spokes."  Id.

In this case, Mr. Jarrett's alleged involvement is limited to one spoke of the scheme charged in the Superseding Indictment.  Essentially, the Superseding Indictment alleges that Mr. Innarelli and defendant Michael Bergdoll plotted with other defendants as the hub of the real estate scheme that worked through a series of different mortgage lender spokes to achieve its aims.  Only one such spoke allegedly included Mr. Jarrett.  Mr. Jarrett worked as a branch manager for Equicredit, a subsidiary of the Bank of America as well as the predecessor owner to Bank of America.  Notably, Equicredit is only one of fifteen lenders that Mr. Innarelli allegedly plotted with other defendants to

7

defraud.  As a result, over half of the sixty-eight allegedly fraudulent transactions involve other spokes radiating from Mr. Innarelli's hub.

The hub-and-spoke nature of the scheme alleged in this case renders a trial with the other defendants charged in the Superseding Indictment unduly prejudicial to Mr. Jarrett.  The Court should not try all of the remaining defendants together "simply because there is a common actor" in each of the allegedly fraudulent real estate transactions.  See United States v. Serafini, 7 F.Supp.2d 529, 555 (M.D. Pa. 1998) (citing Kotteakos), aff'd, 167 F.3d 812 (3rd Cir. 1999).  At a single trial of a hub-and-spoke conspiracy, "[t]he dangers for transference of guilt from one to another across the lines separating conspiracies, subconsciously or otherwise, are so great that no one really can say prejudice to substantial right has not taken place." Kotteakos, 328 U.S. at 774.

> When many conspire, they invite mass trial by their conduct….  Wholly different it is with those who join together with only a few, though many others may be doing the same and though some of them may line up with more than one group….  *They do not invite mass trial by their conduct.  Nor does our system tolerate it.*

Id. at 773 (emphasis added).  Of course, "[t]here is a strong preference in the federal system for jointly trying defendants involved in related crimes."  Sotomayor-Vazquez, 249 F.3d at 16.  However, neither the Court nor the jury can "confuse[] the common purpose of a single enterprise with the several, though similar, purposes of numerous separate adventures of like character."  Kotteakos, 328 U.S. at 769; see also United States v. Taglia, 922 F.2d 413, 416-17 (7th Cir. 1991) (The "presumption that participants in a conspiracy or other criminal scheme should be tried together …. is a rebuttable presumption.").

8

In Pappathanasi, a judge of this Court examined a hub-and-spoke conspiracy similar to the scheme alleged here. 383 F.Supp.2d at 296. Pappathanasi concerned a single alleged tax evasion conspiracy among certain West Lynn Creamery ("WLC") executives and various Dunkin' Donuts franchisees. Faced with evidence that, like the allegations in this case, pointed to multiple distinct schemes, Judge Wolf explained that the evidence failed "to establish a single conspiracy under Kotteakos," but instead "at best, relates to a possible hub, WLC, with independent spokes, each of the Dunkin' Donuts franchisees." Id. On a motion for judgment of acquittal following the government's presentation of its case, the Court concluded that "a judgment of acquittal is necessary and appropriate" because of the "unfair prejudice" that resulted from the variance between the single conspiracy alleged and the multiple conspiracies evidenced. Id. at 296-97 (citing Kotteakos, 328 U.S. at 754-55).

Although, as in Pappathanasi, hub-and-spoke analysis typically concerns the issue of variance at trial, it also provides an appropriate basis for severance of defendants before trial in the circumstances of this case. See Serafini, 7 F.Supp.2d at 555 (citing Kotteakos as a basis for severing defendant in an alleged hub-and-spoke conspiracy). Here, a single trial with the other defendants risks the same substantial "unfair prejudice" to Mr. Jarrett as in Pappathanasi because his alleged involvement is limited to one spoke of the single fraudulent scheme outlined in the Superseding Indictment. See Pappathanasi, 383 F.Supp.2d at 296. Combined with the complexity of the alleged scheme, this "unfair prejudice" will "prevent the jury from making a reliable judgment about guilt or innocence" in Mr. Jarrett's case. See Sotomayor-Vazquez, 249 F.3d at 16-17; see also Rodriguez-Marrero, 390 F.3d at 27.

9

Severing trial of the remaining defendants would satisfy Rule 14's purpose in preventing such prejudice to Mr. Jarrett. See Rodriguez-Marrero, 390 F.3d at 26; Sotomayor-Vazquez, 249 F.3d at 16-17. Furthermore, severance would satisfy the Court's interest, under its inherent case management "authority and responsibility," in providing "simplicity in procedure" and "fairness in administration" of the proceeding. See Shea, 750 F.Supp. at 49, 50 (quoting Fed. R. Crim. P. 2); see also Leichter, 160 F.3d at 35-36. A single trial of so many defendants, involving so many counsel, where the Court has already set aside up to three months for trial, would be unnecessarily taxing on the parties, the jury, and the Court. Given the complexities of the case, a trial of so many defendants for their respective involvement in any number of the sixty-eight different transactions at issue would be "unduly complex and lengthy." See Shea, 750 F.Supp. at 50. Consequently, in the interests of case management as well as the prevention of prejudice to Mr. Jarrett, severance is appropriate.

**B.     Evidence Admissible Against Other Defendants But Inadmissible Against Mr. Jarrett Warrants Severance of Mr. Jarrett's Trial.**

Severance of Mr. Jarrett's trial is also appropriate because evidence admissible against other defendants but inadmissible against Mr. Jarrett would require separate trials. See Rodriguez-Marrero, 390 F.3d at 26 (noting "the impact of evidence admissible against only some defendants" as basis for severance). In particular, the government's use at trial of the statements of Mr. Innarelli contained in the Memorandum of Interview dated May 21, 2002 ("Interview Memorandum") (attached as Exhibit 1) would require severance of Mr. Jarrett's trial.

"It is well established that the out-of-court statements of a non-testifying defendant, even if admissible against the declarant, may not be used against a jointly tried

10

codefendant …." United States v. Vega Molina, 407 F.3d 511, 518-19 (1st Cir. 2005). If the declarant testifies, his out-out-court statements may be admissible against him for impeachment purposes, but only if "the statements are not so powerfully inculpating of the other defendants that there would be substantial doubt as to whether the jury could abide by a limiting instruction." Id. at 519 (citing Bruton v. United States, 391 U.S. 123, 135-37 (1968)); see also United States v. Suplimet Corp., 366 F.Supp.2d 1175, 1178 (S.D. Fla. 2005). "A statement is powerfully incriminating … when it is inculpatory on its face." Vega Molina, 407 F.3d at 520; see id. (noting that "[t]his criterion is easier to state than to apply").

In this case, the statements of Mr. Innarelli contained in the Interview Memorandum are both inculpatory and powerfully incriminating. In the Interview Memorandum, Mr. Innarelli, the only defendant charged in all sixty-nine counts of the Superseding Indictment, explains his involvement in various real estate transactions to an IRS Special Agent investigating Mr. Innarelli's role in a "'land flip' scheme." More importantly, Mr. Innarelli states that most of the mortgages for the real estate transactions at issue were obtained through the company for which Mr. Jarrett worked, Equicredit— the company that, according to the Superseding Indictment, Mr. Jarrett, Mr. Innarelli, and other defendants repeatedly schemed to defraud.

By inculpating Mr. Jarrett, the statements of Mr. Innarelli contained in the Interview Memorandum would be inadmissible in a joint trial of Mr. Innarelli and Mr. Jarrett. Of course, if Mr. Innarelli chose to testify at trial, the Interview Memorandum would be admissible against him for impeachment purposes. Cf. Suplimet Corp., 366 F.Supp.2d at 1178. However, if it were admitted into evidence, severance of Mr. Jarrett

11

would be necessary.  See id.; see also United States v. Albert, 773 F.2d 386, 388 (1st Cir. 1985).  Certainly, the Court may choose to defer severance until such time as the government's use of the Innarelli statements contained in the Interview Memorandum renders it necessary.  Cf. Suplimet Corp., 366 F.Supp.2d at 1178.  However, the disruption that such an order would cause, particularly given the tight timeframe in which the Court has scheduled trial of this matter, as well as the additional bases for severance of Mr. Jarrett outlined above, warrant severing Mr. Jarrett before trial.  See Sotomayor-Vazquez, 249 F.3d at 17 ("A mid-trial severance is … an extraordinary measure, warranted in very few cases." (internal quotation omitted)).

## CONCLUSION

Based on the complexity, confusion, and prejudice that would result from a trial of Mr. Jarrett with the remaining defendants charged in the Superseding Indictment, as well as potential evidence that would require severance of Mr. Jarrett, the Court should exercise its considerable discretion and sever Mr. Jarrett's trial.

        Respectfully Submitted,

        THEODORE JARRETT
        By his Attorneys,

        /s/ Justin P. O'Brien
        _____
        William H. Kettlewell (BBO No. 270320)
        Maria R. Durant (BBO No. 558906)
        Justin P. O'Brien (BBO No. 658765)
         jobrien@dwyercollora.com
        Dwyer & Collora, LLP
        600 Atlantic Ave.
        Boston, MA 02210-2211
        (617) 371-1000

Dated:  March 3, 2006

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULES 112.1, 7.1(A)(2)

The undersigned counsel hereby certifies that a good faith attempt was made to eliminate and narrow the issues raised in this motion through calls with Assistant U.S. Attorney William Welch prior to filing this motion, but that the government could not agree to the requested relief.

/s/ William H. Kettlewell
_____
William H. Kettlewell

Dated: March 3, 2006

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that a true and correct copy of this documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on March 3, 2006.

/s/ Justin P. O'Brien
_____
Justin P. O'Brien

Dated: March 3, 2006