```
                 UNITED STATES DISTRICT COURT
                  DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,      )   CR-N-04-30046-MAP
                               )
             Plaintiff,        )
                               )
     vs.                       )
                               )
THEODORE JARRETT, et al.,      )
                               )
             Defendants.       )
```

### GOVERNMENT'S RESPONSE TO
### DEFENDANT JARRETT'S MOTION FOR SEVERANCE

The United States of America, by and through Michael J. Sullivan, United States Attorney for the District of Massachusetts, and William M. Welch II, Assistant United States Attorney, hereby files this response to defendant Jarrett's Motion for Severance under Rule 14.

Defendant Jarrett's motion should be denied because he has not show that "actual prejudice" will result from a joint trial. In addition, judicial economy will be served best by trying all of the defendants together.

I.  **The Court Should Not Sever Defendant Jarrett's Trial Because He Has Not Shown That He Will Suffer Actual Prejudice From Joinder Of His Trial With His Co-Defendants Or That The Need For Severance Outweighs Judicial Ecomony Concerns.**

The First Circuit's "rule is that those `who are indicted together should be tried together.'" United States v. DeLeon, 187 F.3d 60, 63 (1st Cir. 2001)(quoting United States v. O'Bryant,

1

998 F.2d 21, 25 (1st Cir. 1993)). See also United States v. Capleton, 350 F.3d 231, 239 (1st Cir. 2004)(reaffirming general rule that "`defendants charged in the same indictment should be tried together.'")(quoting United States v. Houle, 237 F.3d 71, 76 (1st Cir. 2001)); United States v. Sotomayor-Vazquez, 249 F.3d 1, 16-17 (1st Cir. 2001)(stating that "[t]here is a strong preference in the federal system for jointly trying defendants involved in related crimes."). "The federal courts have long recognized that consolidated trials tend to promote judicial economy, conserve prosecutorial resources, and foster the consistent resolution of factual disputes common to properly joined defendants.'" United States v. DeLuca, 137 F.3d 24, 36 (1st Cir. 1999)(quoting United States v. Josleyn, 99 F.3d 1182, 1188 (1st Cir. 1996).

To prevail upon a severance motion based upon a claim of prejudicial spillover, "a defendant must show that the joinder of offenses here resulted in `actual prejudice,' which we define as the `substantial and injurious effect or influence in determining the jury's verdict.'" United States v. Melendez, 301 F.3d 27, 36 (1st Cir. 2003)(quoting United States v. Edgar, 82 F.3d 499, 508 (1st Cir. 1996)). To overcome the district court's presumption in favor of joinder, the prejudice must be "so pervasive that it would be likely to effect a miscarriage of justice." DeLeon, 187 F.3d at 63 (citing United States v. Pierro, 32 F.3d 611, 615 (1st

Cir. 1994)).  In other works, there must be a "`a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence.'" Sotomayor-Vazquez, 249 F.3d at 16-17 (quoting Zafiro, 506 U.S. at 539).

"This requirement means more than establishing that the defendant might have had a better chance of acquittal in a separate trial." DeLeon, 187 F.3d at 63 (citing Zafiro, 506 U.S. at 540).  A defendant "is not entitled to severance merely because he may have a better chance of acquittal if tried separately." United States v. Rogers, 121 F.3d 12, 16 (1st Cir. 1997)(citing  Zafiro v. United States, 506 U.S. 534, 540 (1993)).

The burden of showing actual prejudice also means establishing a level of prejudice greater than that inherent in trying multiple counts and multiple defendants together in any joint trial. DeLuca, 137 F.3d at 36; Rose, 104 F.3d at 1415; United States v. Yefsky, 994 F.2d 885, 896 (1st Cir. 1993).  The fact that a co-defendant may have engaged in other bad acts does not suffice to establish "actual prejudice." DeLeon, 187 F.3d at 63 (holding that repeated inquiries about third-party fear based on co-defendant's violent nature and co-defendant's prior drug conviction did not warrant severance); DeLuca, 137 F.3d at 37 (evidence of violent assault by co-defendant not warrant severance for defendant).  The relative disparity between the

weight of the evidence between defendants also does not warrant severance. Id. (citing United States v. Rawwad, 807 F.2d 294, 295 (1st Cir. 1986)(stating that "[t]he difficulty with this argument lies in the case law holding to the contrary.")).

The First Circuit reverses "a decision to deny a motion for severance only upon a showing of strong prejudice, demonstrating a manifest abuse of discretion that deprived the defendant of a fair trial." United States v. Nason, 9 F.3d 155, 158 (1st Cir. 1993).

In this case, defendant Jarrett makes precisely the same arguments that the First Circuit routinely has rejected in these types of severance claims. Defendant Jarrett's argument of prejudicial spillover hinges on the following core claims: first, the complexity and breadth of the case; second, the confusion resulting from the varying roles and involvement of the co-defendants; and third, the interview of defendant Albert Innarelli would be admissible at a joint trial, but inadmissible at a severed trial. None of these claims, viewed separately or together, support severance.

Defendant Jarrett overstates the complexity of the case. The case is not complex. Boiled down to its essence, the case is about a group of individuals who submit false documents to financial institutions in order to obtain loans. There is nothing conceptually difficult or factually complex about the

4

allegations in the Superseding Indictment.  What makes the case more unique than most is simply that there was a lot of fraud, there was a substantial number of people involved in the fraud, and this conduct occurred over an extended period of time.

Contrary to defendant Jarrett's argument, see Motion for Severance (hereinafter "Motion), pgs. 3-4, there is nothing confusing or distinct about the fraud scheme and the charged fraudulent transactions.  The players in the fraud scheme consisted of unscrupulous property sellers, corrupt mortgage brokers, dishonest appraisers, and a crooked real estate attorney.  Because the property sellers shopped the prospective buyers around to different corrupt mortgage brokers, the mortgage brokers and the appraisers typically changed from deal to deal.  However, the property sellers generally remained the same, and the closing attorney, defendant Albert Innarelli, was the same for all of the fraudulent real estate transactions.

Each of the defendants had a distinct role in the scheme to defraud.  They acted either as a property seller, a mortgage broker, an appraiser, or an attorney.  All of these roles are sufficiently distinct to preclude any danger of the jury "blurring the lines" between the defendants.

All of the co-defendants also employed the same "cookie cutter" fraudulent scheme over and over again to defraud various financial institutions.  The fraudulent scheme involved the same

core fraudulent conduct -- down payments by buyers that were never made; inflated income figures for buyers; inflated bank balances for buyers; inflated appraisals; fraudulent chains of title; false settlement statements; bogus second mortgages; and hidden payments back to co-conspirators at the closing. All of the charged fraudulent transactions shared in whole or in part these acts of fraud.

Moreover, all of the fraudulent real estate transactions are connected to each other, not only by the players involved in the scheme to defraud, but also by the fact that the profits from each fraudulent real estate transaction financed the next fraudulent real estate transaction. Therefore, a particular defendant's involvement in one fraudulent real estate transaction, but not the next fraudulent real estate transaction, does not mean that the transactions are not connected. Instead, the profits of each fraudulent real estate transaction perpetuated the success of the overall scheme to defraud.

Therefore, this case is distinguishable from United States v. Pappathanasi, 383 F.Supp.2d 289, 297 (D.Mass. 2005)(stating that "success of one franchisee in evading taxes did not depend on the efforts any other, and there is no evidence that the franchisees thought it did."). Since the profits generated from one fraudulent real estate transaction made the ensuing fraudulent real estate transaction possible, this case is not a

"hub and spoke" conspiracy as described by defendant Jarrett.

Finally, it is simply incorrect to state that the "hub" of the conspiracy was only defendant Innarelli, or defendant Innarelli and defendant Michael Bergdoll. See Motion, pg. 7.  In fact, the evidence will show that a number of the defendants and their co-conspirators -- defendants Bergdoll, Romeo, Matos, Innarelli and others -- formed a loose partnership in which they agreed not to bid against each during public and private property auctions and then split the profits equally after flipping the property to a buyer.  This hardly appears to be the classic "hub and spoke" conspiracy suggested by the defendant.

**II.   Bruton Does Not Apply To The Challenged Statement Because Bruton Only Applies To Statements That Expressly Incriminate A Co-Defendant And Are Powerfully Incrminating.**

Defendant Jarrett claims that statements made by defendant Innarelli in an interview with Special Agents Leahy and Carroll on May 21, 2002 should be excluded as inadmissible under Bruton or require severance of defendant Jarrett.  The statements, however, do not rise to the level of a Bruton issue.

Statements fall within Bruton's scope only "`where the co-defendant's statement "expressly implicates" the defendant, leaving no doubt that [the statement] would prove "powerfully incriminating."'" United States v. Sotomayor-Vazquez, 249 F.3d 1, 11 (1st Cir. 2001)(quoting United States v. Smith, 46 F.3d 1223, 1228 (1st Cir. 1995)(quoting Bruton, 391 U.S. at 124 n. 1, 88

S.Ct. 1620)(internal quotations omitted)). See United States v. Lopez-Lopez, 282 F.3d 1, 12 (1st Cir. 2002).  The mere fact that a statement may be "of an `incriminatory nature' is insufficient to clear the hurdle requiring a powerfully incriminating statement." Lopez-Lopez, 282 F.3d at 12.

"Of course, the fact that the prosecution offered the evidence does not itself mean that Bruton's inculpatory evidence test has been met." Brown v. Maloney, 267 F.3d 36, 41 n.1 (1st Cir. 2001).  "In every Supreme Court case dealing with *Bruton,* whether the Court found a Bruton problem or not, the prosecution offered the evidence." Brown, 267 F.3d at 41 n.1 (1st Cir. 2001)

The interview statements challenged by defendant Jarrett do not fall within Bruton's scope because the statements neither "expressly implicates" defendant Jarrett nor is "powerfully incriminating."  First, defendant Innarelli denied that he engaged in any illegal conduct.  In fact, defendant Innarelli told the agents that land flipping is legal as long as no one is deceived. See Motion, Attachment 1, ¶ 3.  Second, defendant Innarelli's specific statements about defendant Jarrett neither "expressly implicate[d]" defendant Jarrett nor were "powerfully incriminating."  Rather, defendant Innarelli stated that many of the real estate transactions were processed through defendant Jarrett and Equicredit. See Motion to Sever, Attachment 1, ¶ 7. Therefore, by its very terms, the statements do not expressly

implicate defendant Jarrett.

Second, the statements are not even incriminating. Defendant Innarelli simply acknowledged that he and defendant Jarrett had a business relationship. This fact is independently established by all of the loan files that list Equicredit as the lender, defendant Jarrett's branch office as the Equicredit representative, and defendant Innarelli as the closing attorney. Therefore, <u>Bruton</u> does not apply to defendant Innarelli's interview statements.

### III. <u>Conclusion</u>

Based upon the foregoing, the Government respectfully requests that the court deny defendant Jarrett's Motion to Sever.

Filed this \_\_\_\_th day of March, 2006.

                                            Respectfully submitted,

                                            MICHAEL J. SULLIVAN
                                            United States Attorney

                                             /s/ William M. Welch II
                                            WILLIAM M. WELCH II
                                            Assistant United States Attorney

CERTIFICATE OF SERVICE

Hampden, ss.                               Springfield, Massachusetts
                                           March 17, 2006

  I, William M. Welch, Assistant U.S. Attorney, do hereby certify that I have served a copy of the foregoing by filing said motion and providing electronic notice to:

| | |
|---|---|
| Moira L. Buckley, Esq.<br>Shipman & Goodwin<br>One Constitutional Plaza<br>Hartford, CT  06103-1919 | Steven W. Leary, Esq.<br>95 State Street<br>Springfield, MA  01103 |
| Vincent A. Bongiorni, Esq.<br>95 State Street<br>Springfield, MA  01103 | Michael O. Jennings, Esq.<br>73 Chestnut Street<br>Springfield, MA  01105 |
| Maria Durant, Esq.<br>Dwyer & Collora<br>600 Atlantic Avenue<br>Boston, MA  02210 | Peter M. Murphy, Esq.<br>101 State Street, Ste. 715<br>Springfield, MA  01103 |
| Robert Santaniello, Jr., Esq.<br>Santaniello & Santaniello<br>83 State Street<br>Springfield, MA  01103 | Jack St. Clair, Esq.<br>73 Chestnut Street<br>Springfield, MA  01103 |
| Mark J. Albano, Esq.<br>Dalsey, Ferrara & Albano<br>73 State Street<br>Springfield, MA 01103 | Thomas A. Kokonowski, Esq.<br>21 Stockbridge Street<br>Springfield, MA  01103 |
| Kevin G. Murphy, Esq.<br>115 State Street<br>Springfield, MA  01103 | Gary A. Ensor, Esq.<br>34 Bridge Street<br>South Hadley, MA  01075 |

                                   /s/ William M. Welch II
                                   WILLIAM M. WELCH II
                                   Assistant United States Attorney